UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **ESHIPGLOBAL, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:26-CV-1762-B** |
| | § | |
| **BANK OF AMERICA, N.A.,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Bank of America, N.A. ("BOA")'s Motion to Dismiss Plaintiff's Complaint (Doc. 4). For the reasons below, the Court **GRANTS in part** BOA's motion and **DISMISSES without prejudice** Plaintiff eShipGlobal, Inc. ("eShipGlobal")'s breach of contract and negligence claims. The Court also **GRANTS** eShipGlobal leave to file an amended complaint on or before December 10, 2026, as provided by the scheduling order (Doc. 11).

## I.

## BACKGROUND

This case is about a dispute between a bank and its customer. Defendant BOA is a banking association. Doc. 1-5, Pet.[1], ¶ 10. Plaintiff eShipGlobal, a global shipping and compliance software provider, used BOA's banking services and maintained several bank accounts with BOA. *Id.* at ¶¶ 9, 26.

In 2025, eShipGlobal was a victim of banking fraud. *Id.* at ¶ 11. eShipGlobal alleges that an unknown third-party fraudster gained access to its BOA bank accounts and wired, in total, over $1

[1] Because this suit was originally filed in Texas state court, eShipGlobal's initial pleading is styled as a "Petition." However, the Court will refer to it as a "Complaint."

million to several bank accounts in the United Arab Emirates. *Id.* at ¶ 3. The fraudster made eleven transfers over a one-hour period with transactions ranging from $96,992 to $148,212. *Id.* at ¶ 12. These transfers were made through BOA's "CashPro" application and online banking platform. *Id.* at ¶ 11. BOA sent fraud alerts on only three of the transactions, and the third party cleared the alerts before eShipGlobal could respond. *Id.* at ¶ 16.

Approximately an hour after the transactions were initiated, eShipGlobal became aware of the fraud and immediately began efforts to stop the transfers. *See id.* at ¶¶ 17, 20. eShipGlobal reported the fraudulent transfer through the CashPro platform and to BOA's client service team. *Id.* at ¶ 17. Despite its prompt requests for assistance, BOA did not initiate a recall action or freeze the accounts for two to three hours after eShipGlobal's initial report. *See id.* at ¶¶ 17-19. Consequently, BOA was only able to recall two of the eleven transactions, and BOA refused to reimburse eShipGlobal for the $1,118,299 lost in the remaining nine transactions. *Id.* at ¶¶ 3, 21. After failing to obtain relief through BOA's internal claims process, eShipGlobal filed this suit. *Id.* at ¶ 31.

eShipGlobal asserts a common law breach of contract claim against BOA. ¶¶ 32-34. In the alternative, eShipGlobal also brings a claim under § 4A.204 of the Texas Business and Commerce Code, *id.* at ¶¶ 35-38, and a common law negligence claim, *id.* at ¶¶ 38-41.

As to the breach of contract claim, eShipGlobal alleges that BOA breached "deposit agreements and online banking agreements relating to Plaintiff's bank accounts and/or BOA's online banking services" by "failing to protect [eShipGlobal's] accounts from the repeated fraudulent and unauthorized transfers described above and by failing to reimburse [eShipGlobal] for lost funds." *Id.* at ¶ 33. In the alternative, eShipGlobal alleges that "BOA violated Section 4A.204(a) by

refusing to reimburse [eShipGlobal] for nine (9) fraudulent and unauthorized transfers." *Id.* at ¶ 37. Finally, as to the negligence claim, eShipGlobal alleges that "BOA breached its duty of care" by, among other things, "failing to provide and implement reasonable reporting procedures [for fraudulent wire transfers]" and "failing to employ commercially reasonable measures to detect and prevent fraud." *Id.* at ¶ 40.

BOA filed a Motion to Dismiss eShipGlobal's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). *See generally* Doc. 4, Mot. Dismiss. eShipGlobal responded, requesting leave to amend if the Court were to conclude that the Complaint was deficient as to any claim. Doc. 8, Pl.'s Resp., 9-10. BOA replied. *See generally* Doc. 10, Def.'s Reply.

The Court considers BOA's Motion to Dismiss below.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "state a claim to relief that is plausible on its face." *Sanchez v. Nunemaker*, 179 F.4th 315, 318 (5th Cir. 2026) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). When adjudicating a 12(b)(6) motion, the "court accepts all well-pleaded facts as true and draw[s] all reasonable inferences in favor of the nonmoving party." *Harmon v. City of Arlington*, 16 F.4th 1159, 1162 (5th Cir. 2021) (internal quotation marks and citation omitted) (alteration in original). However, "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

## III.

## ANALYSIS

BOA makes three arguments for the dismissal of eShipGlobal's claims. First, it argues that eShipGlobal's common law breach of contract and negligence claims are preempted by § 4A of the Texas Business and Commerce Code. Doc. 4, Mot. Dismiss, 2-4. Second, BOA argues that eShipGlobal's negligence claim is barred by the economic loss doctrine. *Id.* at 4-5. Finally, BOA argues that eShipGlobal fails to state a claim under § 4A.204. *Id.* at 5.

The Court concludes that § 4A preempts eShipGlobal's common law claims, and eShipGlobal successfully states a claim under § 4A.204.

### A. *Section 4A Preempts eShipGlobal's Common Law Claims.*

BOA argues that eShipGlobal's common law claims are preempted by Article 4A of the Uniform Commercial Code, which has been adopted by the Texas State Legislature in § 4A of the Texas Business and Commerce Code.[2] The Court agrees.

Article 4A "applies to 'funds transfers,' also known in the banking industry as 'wholesale wire transfers.'" *Ison-Newsome v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 3:22-CV-2805-L-BH, 2023 WL 5022287, at *3 (N.D. Tex. July 21, 2023) (Ramirez, M.J.), *report and recommendation adopted*, No. 3:22-

[2] *See Grainmarket, LLC v. PNC Bank, N.A.*, No. 3:22-CV-2419-X, 2023 WL 4162278, at *1 (N.D. Tex. June 23, 2023) (Starr, J.). The Court accordingly uses "Article 4A" and "Section 4A" interchangeably and considers out-of-circuit cases analyzing the preemptive effect of Article 4A.

CV-2805-L, 2023 WL 5022681 (N.D. Tex. Aug. 7, 2023) (Lindsey, J.) (footnote omitted) (quoting *Am. Airlines Emps. Fed. Credit Union v. Martin*, 29 S.W.3d 86, 98 (Tex. 2000)). "Article 4A establishes precise and detailed rules to assign responsibility, define behavioral norms, allocate risks and establish limits of liability regarding funds transfers." *Id.* (citation and internal quotation marks omitted). Accordingly, "[w]here a legal dispute arises from a funds transfer, the parties should look first to Article 4A for guidance in bringing and resolving their claims." *Consorcio Indus. de Construccion Titanes, S.A. de C.V. v. Wells Fargo Bank, N.A.*, No. 3:10-CV-2111-K, 2012 WL 13019678, at *2 (N.D. Tex. July 12, 2012) (Kinkeade, J.).

Article 4A "represent[s] a careful and delicate balancing of . . . interests and [is] intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article." Tex. Bus. & Com. Code § 4A.102, cmt. Accordingly, Article 4 preempts claims that are "covered by" Article 4 or "create rights, duties, and liabilities inconsistent with [it]." Tex. Bus. & Com. Code § 4A.102, cmt.; *see Consorcio*, 2012 WL 13019678, at *2; *Contractors Source, Inc. v. Amegy Bank Nat'l Ass'n*, 462 S.W.3d 128, 138 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("When the UCC applies, common-law claims that conflict with the UCC are precluded.").

In other words, Article 4A preemption applies when "the facts of the case or actions complained of [fall] squarely within the situations covered by [Article] 4A." *Consorcio*, 2012 WL 13019678, at *3. However, "[c]ourts have generally recognized that Article 4A does not preempt common law claims arising from conduct that occurred outside the wire transfer process." *Ison-Newsome*, 2023 WL 5022287, at *5. This includes claims "based on alleged conduct occurring before or after the automated funds transfer." *Henderson v. Wells Fargo Bank*, 779 F. Supp. 3d 910, 913 (S.D.

Tex. 2025) (citation omitted).

Here, eShipGlobal's common law claims incorporate various allegations about conduct occurring before, during, and after the fraudulent wire transfer. To the extent that these claims are based on BOA's conduct relating to the wire transfer itself—for example, BOA's failure to flag and stop the transactions as they were occurring—they are preempted by Article 4A. *See Ison-Newsome*, 2023 WL 5022287, at *4 (holding that 4A preempts negligence claims "based on the wire transfer itself [which] seek to hold [d]efendant [bank] liable for processing [the] transaction request" because this conduct "is specifically addressed by Article 4A"); *Sols. v. First State Bank of Brownsboro*, No. 6:19-CV-329-JDK, 2020 WL 12991132, at *4 (E.D. Tex. Apr. 16, 2020) (holding that 4A preempts claims "to the extent they are based on the Bank's conduct in processing the automated funds transfers" because "Article 4A[] plainly covers [this conduct]").

However, eShipGlobal argues that its common law claims are not preempted to the extent they are based on BOA's pre- and post-transfer conduct, which they argue is outside the scope of Article 4A preemption. *See* Doc. 8, Pl.'s Resp., 5. The Court disagrees.[3]

1. Article 4A Preempts eShipGlobal's Breach of Contract Claim.

eShipGlobal's breach of contract claim is preempted by Article 4 because Article 4 squarely covers the alleged conduct. eShipGlobal's alleges that BOA "breached its deposit agreements and online banking agreements" by "failing to protect [eShipGlobal's] accounts from . . . repeated fraudulent and unauthorized transfers" and "failing to reimburse [eShipGlobal] for lost funds." Doc. 1-5, Pet, ¶ 33.

---

[3] The Court first considers preemption of eShipGlobal's breach of contract claim because eShipGlobal pleads negligence in the alternative. *See* Doc. 1-5, Pet., ¶ 39.

This conduct relates to the wire transfer itself and is squarely covered by Article 4A, which explains which party bears the risk of loss when a bank fails to implement adequate security measures for wire transfers, *see* Tex. Bus. & Com. Code § 4A.202; when a bank must cancel or amend a payment order, *id.* § 4A.211; as well as when a bank must reimburse a customer for a fraudulent wire transfer, *id.* § 4A.204(a). Accordingly, eShipGlobal's breach of contract claim is preempted by Article 4A. *See Grainmarket, LLC v. PNC Bank, N.A.*, No. 3:22-CV-2419-X, 2023 WL 4162278, at *1-2 (N.D. Tex. June 23, 2023) (Starr, J.) (citing similar provisions of 4A and concluding that 4A preempts breach of contract claim).[4]

2. <u>Article 4A Preempts eShipGlobal's Negligence Claim.</u>

eShipGlobal argues that its negligence claim is not preempted by Article 4A to the extent it is based on BOA's conduct occurring before or after the fraudulent wire transfer. As to pre-transfer conduct, eShipGlobal argues that BOA failed "to employ commercially reasonable measures to detect and prevent fraud" before the fraudulent transfers were made. Doc. 1-5, Pet., ¶ 17. It alleges that BOA "design[ed], promot[ed], and us[ed] customer-facing applications" like CashPro "that allow for fraudster manipulation." *Id.* at ¶ 40. Specifically, "BOA did not set up dual approver functions" which left eShipGlobal susceptible to fraud. *Id.* at ¶ 16; *see also id.* at ¶¶ 27-28 (alleging that the "CashPro application has critical [security] weaknesses" because it relies "solely on single-user and token authentication" and "does not give users the ability to recall transfers directly").

---

[4] The Court summarily discusses preemption of eShipGlobal's breach of contract claim given the limited detail provided in the Complaint. However, much of the Court's analysis below regarding preemption of eShipGlobal's negligence claim is also applicable to eShipGlobal's breach of contract claim. *See Grainmarket*, LLC, 2023 WL 4162278, at *1-2 (analyzing preemption of negligence and breach of contract claim together).

However, Article 4A expressly covers the propriety of a bank's security procedures, so allowing eShipGlobal's negligence claim to proceed would create "rights, duties, and liabilities inconsistent with [it]." Tex. Bus. & Com. Code § 4A.102, cmt. As noted above, Article 4A articulates a set of rules to determine which party—the bank or the customer—bears the risk of a fraudulent wire transfer when a security procedure is in place:

> If a bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name of the customer as sender will be verified pursuant to a security procedure,[5] a payment order received by the receiving bank is effective as the order of the customer, whether or not authorized, if (i) the security procedure is a commercially reasonable method of providing security against unauthorized payment orders, and (ii) the bank proves that it accepted the payment order in good faith and in compliance with the security procedure and any written agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the customer.

*Id.* § 4A.202(b).

In other words, "[t]he effect of Section 4A-202(b) is to place the risk of loss on the customer if an unauthorized payment order is accepted by the receiving bank after verification by the bank in compliance with a commercially reasonable security procedure." *Id.* § 4A.203, cmt. 5. Moreover, Article 4A describes in detail how courts ought to determine whether a security procedure is "commercially reasonable." *See id.* § 4A.202(c).

Therefore, to the extent that eShipGlobal's negligence claim is based on alleged security failures with CashPro or other BOA security procedures relating to wire transfers, it is clearly preempted by Article 4A. *See Grainmarket, LLC*, 2023 WL 4162278, at *2 (holding 4A preempts negligence claims because 4A governs cases where "a bank and its customer have agreed that the

---

[5] "Security procedure" is defined as "a procedure established by an agreement between a customer and a receiving bank for the purpose of (i) verifying that a payment order or communication amending or cancelling a payment order is that of the customer, or (ii) detecting error in the transmission or the content of the payment order or communication." Tex. Bus. & Com. Code § 4A.201.

authenticity of payment orders . . . will be verified pursuant to a security procedure" (quoting Tex. Bus. & Com. Code § 4A.202(b)); *Henderson*, 779 F. Supp. 3d at 914 ("[A]ctions arising from verifying a payment order or detecting error in a payment's transmission fall within Article 4A's ambit."). In sum, Article 4A preempts eShipGlobal's negligence claim to the extent that it is based on alleged faults in BOA's security procedures.

The cases eShipGlobal provides where pre-transfer conduct was not preempted are readily distinguishable. Most deal with a situation where a third party opened a bank account with the defendant bank to fraudulently wire money. Courts have held that Article 4A does not preempt claims based on this conduct because Article 4A does not cover the opening of bank accounts and because this conduct is a separate transaction from subsequent fraudulent wire transfers. *See Sols*, 2020 WL 12991132, at *4 ("Nothing in Article 4A addresses a bank's duties or liabilities in opening an account . . . ."); *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 223 (4th Cir. 2002) (holding that 4A does not preempt claims about a bank "allowing [a third party] to operate open and operate a bank account"); *Elkin Valley Baptist Church v. PNC Bank, N.A.*, 748 F. Supp. 3d 293, 347 n.115 (W.D. Pa. 2024) (interpreting plaintiff's claim to be based on defendant bank's "alleged breaches of duty in opening the [bank] account, rather than as an allegation that [defendant bank] was negligent in transferring the funds to the account" and explaining that a claim based on "breach of duty in transferring the funds" would be "preempted" by 4A). Here, however, eShipGlobal does not make similar factual allegations that BOA allowed the fraudster to open a BOA bank account.

*Henderson v. Wells Fargo Bank*, 779 F. Supp. 3d 910 (S.D. Tex. 2025), is similarly distinguishable. *Henderson*, like the cases where a fraudster opened a bank account, involved conduct that was separate from the fraudulent wire transfer itself. *Id.* at 914-15. In *Henderson*, fraudsters first

gained access to the plaintiff's bank account and made it appear that the account had surplus funds. *Henderson v. Wells Fargo Bank,* N.A., No. 2:23-CV-00166, 2024 WL 5184469, at *1 (S.D. Tex. Oct. 2, 2024), *report and recommendation adopted in part, rejected in part*, 779 F. Supp. 3d 910 (S.D. Tex. 2025). Then, the fraudsters convinced the plaintiff to wire funds directly into the fraudsters' account. *Id.* The *Henderson* court concluded that Article 4A did not preempt the plaintiff's common law negligence claim to the extent it was based on this pre-transfer conduct because the hacking of bank account was a wholly separate event from the wire transfer itself and thus outside Article 4A's purview. *Henderson*, 779 F. Supp. 3d at 915 ("These alleged duties exceed the scope of Article 4A because they do not seek to assign duties and liabilities for wire-transfer procedures."); *see Consorcio*, 2012 WL 13019678, at *3 (holding that 4A does not preempt claims based on "a separate transaction from the wire transfer").

By contrast, here, eShipGlobal's Complaint does not contain any allegations that the hacking of the account was a separate transaction from the wire transfer. Instead, these two events occurred simultaneously and therefore cannot be conceptually separated into separate events. Therefore, because the complained pre-transfer conduct is inherently connected to the wire transfer process itself, it is preempted by Article 4A.

As to post-transfer conduct, eShipGlobal alleges that BOA "fail[ed] to reasonably and promptly escalate eShipGlobal's claim and request for reversals." Doc. 1-5, Pet., ¶ 40; *see also id.* at ¶ 29 ("Post-incident, BOA's response [was] unreasonably slow, fragmented and lacked urgency."). "This includes a failure to act immediately, a failure to detect fraudulent transactions with obvious hallmarks, a failure to halt or recall wires despite early notification, excessive time-wasting with fraud-

reporting procedures . . . , repeatedly re-routing through departments and BOA, and failure to provide documentation or follow-up on the 'claim.'" *Id.* at ¶ 26.

However, Article 4A expressly covers when banks are required to refund payment orders and when cancellations to payment orders are effective or rightful. *See* Tex. Bus. & Com. Code § 4A.204(a) (explaining when a bank must "refund any payment of the payment order"); *id.* § 4A.211 (explaining when a bank must cancel or amend a payment order). Therefore, allowing eShipGlobal's negligence claim to proceed would create "rights, duties, and liabilities inconsistent with [Article 4A]." *Id.* § 4A.102, cmt.; *see Ison-Newsome*, 2023 WL 5022287, at *4-5. In *Ison-Newsome*, the plaintiff, a customer of the defendant bank, brought negligence and negligent undertaking claims against the defendant bank alleging that "[it] acted negligently by failing to inform her that the wire transfer was fraudulent, not asking more about the transaction to help identify the scammers' fraud, lifting the account freeze and allowing the wire transfer to proceed, not using 'reasonable care in the course of recalling the funds,' and failing to otherwise 'reasonably act in defense of the funds.'" *Id.* at *5 (citation omitted). The *Ison-Newsome* court held that these claims were preempted because they were "based on the wire transfer itself and [sought] to hold [the defendant] liable for processing her transaction request, which is specifically addressed by Article 4A." *Id.* at *4-5; *see also Grainmarket, LLC*, 2023 WL 4162278, at *2 (holding that 4A preempted plaintiff's claims based on allegations that defendant bank did not honor the recall request because 4A "governs whether a bank is 'obliged to pay the amount of [a payment] order to the beneficiary of the order" (citation omitted)); *Henderson*, 779 F.Supp.3d at 915-16 (holding that 4A preempts negligence claims predicated on conduct occurring after wire transfer because "Article 4A speaks directly to procedures for cancelling and amending payment orders" (citing Tex. Bus. & Comm. Code § 4A.211)).

While courts have held that Article 4A does not preempt misrepresentation claims based on post-transfer representations made by a bank, *see*, *e.g.*, *Ison-Newsome*, 2023 WL 5022287, at *5, eShipGlobal does not bring a misrepresentation claim or allege post-transfer misrepresentations. Therefore, Article 4A preempts eShipGlobal's negligence claim because Article 4A squarely addresses the propriety of security procedures relating to wire transfers as well as when banks are obliged to cancel or refund fraudulent wire transfers.[6] Accordingly, the Court need not consider whether the economic loss rule bars eShipGlobal's negligence claim.

B. *eShipGlobal States a Claim Under § 4A.204 of the Texas Business and Commerce Code*

Next, BOA argues that eShipGlobal fails to state a claim under § 4A.204(a) of the Texas Business and Commerce Code because that provision only "imposes liability . . . for accepting unauthorized payment orders" and the payment orders in this case were not "unauthorized." Doc. 4, Mot. Dismiss, 5. The Court disagrees.

Section 4A.204(a) provides that a "bank shall refund any payment of the payment order" when it "accepts a payment order issued in the name of its customer as sender which is . . . not authorized *and not effective as the order of the customer under Section 4A.202*." Tex. Bus. & Com. Code § 4A.204(a) (emphasis added). In turn, § 4A.202 explains the circumstances under which a payment order is (a) authorized[7] and (b) effective as the order of the customer.[8] *See id.* §§ 4A.202(a)-(b).

---

[6] The result would be the same even if the Court were to interpret eShipGlobal's complaint as pleading a negligent undertaking claim. *See Ison-Newsome*, 2023 WL 5022287, at *5 (holding that 4A precludes plaintiff's negligence and negligent undertaking claims).

[7] A payment order "is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency." *Id.* § 4A.202(a).

[8] "[A] payment order received by the receiving bank is effective as the order of the customer, whether or not authorized" if "a bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name of the customer as sender will be verified pursuant to a security procedure," "the security procedure is a commercially reasonable method of providing security against unauthorized payment orders," and "the bank proves that it accepted the payment order in good faith and in compliance with the security

Here, eShipGlobal admits that the fraudulent transfers were not authorized because it alleges that a third-party fraudster without authority initiated the transfers. Doc. 1-5, Pet., ¶ 13. ("[N]o one at eShipGlobal authorized, approved or ratified any of the 11 transfers."). And eShipGlobal makes sufficient allegations that the fraudulent transfers were not effective as the order of the customer because BOA's security procedures were not commercially reasonable. *E.g.*, *id.* at ¶ 37 (describing the transfers as "fraudulent and unauthorized"); *id.* at ¶ 16 (alleging that "BOA did not set up dual approver functions on the accounts, leaving them subject to fraudster manipulation"); *id.* at ¶ 27 (alleging that "the CashPro application has critical weaknesses including the ability to initiate single-approval wires without appropriate security controls" and "relying solely on single-user and token authentication is simply not reasonable"); *cf. Texas Brand Bank v. Luna & Luna, LLP*, No. 3:14-CV-1134-P, 2015 WL 12916411, at *2 (N.D. Tex. Feb. 27, 2015) (Solis, J.), *on reconsideration in part*, No. 3:14-CV-01134-P, 2016 WL 3660579 (N.D. Tex. Jan. 29, 2016) (compiling cases) ("[E]ach Circuit that has examined security procedures in this context has held that use of an ID and password alone is inadequate.").

Therefore, accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of the nonmovant, the Court concludes that eShipGlobal states a claim under § 4A.202.

C. *The Court Grants eShipGlobal Leave to Amend Its Complaint.*

eShipGlobal asks this Court to grant leave so it may amend its Complaint to correct deficiencies identified by the Court. Doc. 8, Pl.'s Resp., 10. Under Federal Rule of Civil Procedure 15(a), leave to file amended complaints "shall be freely given when justice so requires." FED. R. CIV.

---

procedure and any written agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the customer." *Id.* § 4A.202(b).

P. 15(a). And there is a "strong presumption in favor of granting leave to amend." *Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006). Here, eShipGlobal has not yet amended its Complaint, and "[w]hen a plaintiff's complaint fails to state a claim, a court should generally give the plaintiff at least one chance to amend before dismissing the action." *See Cooper v. Canidae Corp.*, No. 6:20-CV-077-H, 2020 WL 13532970, at *4 (N.D. Tex. Dec. 17, 2020) (Hendrix, J.). Moreover, under the scheduling order, the deadline for eShipGlobal to amend its pleadings has not yet passed. Doc. 11, Scheduling Order, ¶ 2 (noting that the relevant deadline is December 10, 2026). Accordingly, the Court grants eShipGlobal leave to amend its Complaint.

The Court rejects BOA's argument that any amendment would be futile. While eShipGlobal's claims as currently plead for negligence and breach of contract are preempted by Article 4A, eShipGlobal could amend to add additional allegations or other common law claims that are not similarly preempted. *See, e.g.*, *Ison-Newsome*, 2023 WL 5022287, at *5-6 (holding that fraudulent misrepresentation claim was not preempted by 4A or barred by economic loss rule).

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** BOA's Motion to Dismiss Plaintiff's Complaint (Doc. 4) and **DISMISSES without prejudice** eShipGlobal's negligence and breach of contract claims. The Court also **GRANTS** eShipGlobal leave to file an amended complaint on or before December 10, 2026, as provided in the scheduling order (Doc. 11).

**SO ORDERED.**

**SIGNED: October 28, 2026.**

JANE J. BOYLE
SENIOR UNITED STATES DISTRICT JUDGE